IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRE' BURTON, #Y39791, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 25-cv-00410-SMY |
| ) | |
| C/O GARRETT LANE, ) | |
| WARDEN DARREN GALLOWAY, ) | |
| LT. ROBERT JOHNSON, ) | |
| LT. SULLIVAN, ) | |
| LT. BRIAN BANKS, ) | |
| C/O MOORE, ) | |
| MAJOR JOHN DOE 1, ) | |
| MAJOR JOHN DOE 2, ) | |
| and LT. JOHN DOE 3, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Tre' Burton, an inmate in the custody of the Illinois Department of Corrections (IDOC), filed this lawsuit pursuant to 42 U.S.C. § 1983 to challenge false disciplinary tickets he received at Shawnee Correctional Center. The Complaint (Doc. 1) is now subject to preliminary review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-9)[1]: Officer Garrett Lane began harassing Plaintiff in June 2023, when he had Plaintiff fired from his job

---

[1] Although Plaintiff refers to documents in the Complaint, he submitted no attachments or exhibits, such as disciplinary reports, hearing summaries, grievances, appeals, or letters.

1

without any disciplinary infraction.  Plaintiff lost 18-plus months of good conduct credit as a result. *Id*. at 7.  He was also subject to harassing and retaliatory disciplinary action the following year. *Id*.

### *Disciplinary Ticket 1: February 27-28, 2024*

Officer Lane took Plaintiff to segregation on false disciplinary charges on or around February 27, 2024.  Plaintiff asked Lane what he intended to state in the disciplinary report to justify this punishment.  Officer Lane said, "whatever I want, really." *Id*.

Because this was his first disciplinary ticket, Plaintiff assumed that an investigation would be expedited, video footage reviewed, the ticket expunged, and that he would be released from segregation without delay.  He was surprised that Major John Doe 1 (shift supervisor), Major John Doe 2 (reviewing officer), and Lieutenant John Doe 3 (hearing investigator) never looked at the video footage.  Plaintiff wrote the warden a 5-page letter detailing the incident and asking the warden to watch the video footage.

Plaintiff filed two versions of the same grievance on February 28, 2024; one with a request for relief and one without a request for relief.  The one without a request for relief was processed. That night, Officer Quertermous slipped a disciplinary ticket into Plaintiff's cell door, even though Sergeant Dillman was listed as the serving officer.[2]  Plaintiff immediately requested video footage. He addressed the lack of due process at his hearing before the Adjustment Committee on March 12, 2024.  Lieutenant Johnson told Plaintiff, "It doesn't matter. You were served." *Id*.

Lieutenant Johnson served Plaintiff with a Final Summary Report on March 28, 2025.  In it, Johnson falsely indicated that Plaintiff admitted guilt, when he did not.  Plaintiff grieved the

---

[2] Because Officer Quertermous and Sergeant Dillman are not named as parties to this action, the Court will not treat them as defendants. All claims against them are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties").

issue, and the Administrative Review Board (ARB) expunged the ticket "for not giving a factual account." *Id*. Plaintiff had already completed 14 days in segregation and 30 days of B/C grade. In addition, he was subjected to a strip search and fewer showers. *Id*.

### *Disciplinary Ticket 2: May 27, 2024*

Plaintiff received another false disciplinary ticket on May 27, 2024. At the time, Lieutenant Sullivan said, "[W]e're gonna make sure this one sticks!" *Id*. Plaintiff also heard him say, "Be careful with this one. He's gonna tell Springfield on us." *Id*. The next day, Plaintiff wrote Warden Galloway to report this misconduct. Plaintiff also requested a "keep separate" order to avoid further retaliation by Sullivan. He separately filed a grievance. This ticket was expunged. *Id*.

The day he was released from segregation, Lieutenant Sullivan placed him in a cell with a transgender inmate and referred to Plaintiff as a "sissy." *Id*. Other inmates heard and began questioning his sexuality and threatening his safety. Sullivan also made it clear that he knew about the "keep separate" order but would not follow it by promising to "keep [Plaintiff] close." *Id*. Plaintiff filed a grievance with Warden Galloway, complaining that this had all "gone too far." *Id*. He reported that inmates were now questioning his sexuality, threatening physical violence, and even threatening rape. Warden Galloway did nothing in response to the initial grievance or the 15 grievances he filed in the next 6 months. *Id*. His initial grievance was "suppressed" after the first level of review, and all others were ignored. *Id*.

Plaintiff began sending his grievances directly to the ARB, Office of Administrative Directives Standards, and John Howard Association. At least one grievance was deemed a non-emergency in December 2024. *Id*.

On December 20, 2025, Internal Affairs Officers Banks and Moore met with Plaintiff and offered him the opportunity to participate in a dog training program in exchange for dropping his

grievance. Plaintiff declined the offer. He never saw the grievance again. *Id*.

Banks and Moore scheduled a second meeting on January 31, 2025, to discuss a letter Plaintiff sent to the Office of Administrative Directives Standards. Moore began the meeting by saying, "There's no dogs today." *Id*. When the meeting concluded, Plaintiff was taken to segregation for writing the letter.

External Investigator Billy Stanhouse[3] traveled from Springfield to meet with Plaintiff about the letter on February 18, 2025. Following the meeting, Stanhouse recommended Plaintiff's release from segregation status and transfer due to his "credibility" and extensive documentation of events. *Id*.

## Discussion

Based on the allegations, the Court designates the following claims in the Complaint:

Count 1: Eighth Amendment harassment claim against Defendant Lane for having Plaintiff fired from his prison job in June 2023 and causing him to lose good conduct credit.

Count 2: Fourteenth Amendment claim against Defendants Lane, Doe 1, Doe 2, Doe 3, Johnson, and "the warden" for depriving Plaintiff of a protected liberty interest without due process of law by punishing him for a false disciplinary ticket issued February 27-28, 2024 and a procedurally defective disciplinary hearing on March 12, 2024 with 14 days in segregation, 30 days of B/C grade, a strip search, and fewer showers before the ticket was expunged.

Count 3: Fourteenth Amendment claim against Defendant Sullivan and Galloway for depriving Plaintiff of a protected liberty interest without due process of law by placing him in segregation for an undisclosed amount of time on false disciplinary changes on May 27, 2024 before the ticket was expunged.

Count 4: First Amendment claim against Defendant Sullivan for retaliating against Plaintiff for filing a grievance to challenge the ticket issued May 27, 2024, by disregarding the keep separate order, housing him with a transgender inmate, calling him a "sissy," and inciting inmates to threaten bodily harm.

Count 5: Eighth Amendment claim against Defendants Sullivan and Galloway for

---

[3] Because Plaintiff does not name Stanhouse as a defendant, any claims against him are considered dismissed without prejudice. *Id*.

|  | |
|---|---|
| | deliberately disregarding a serious risk posed to Plaintiff's safety by moving him into a cell with a transgender inmate, calling him a "sissy," and taking no action when other inmates began questioning his sexuality and threatening to harm him on or around May 27, 2024. |
| Count 6: | First Amendment claim against Defendants Banks and Moore for retaliating against Plaintiff when he refused to drop a grievance in December 2024 by denying him participation in the prison's dog training program. |
| Count 7: | First Amendment claim against Defendants Banks and Moore for retaliating against Plaintiff for writing one or more letters to the ARB, Office of Administrative Directives Standards, and/or John Howard Association by moving him to segregation on or around January 31, 2025. |

Any claim mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Count 1

The Eighth Amendment prohibits cruel and unusual punishment of convicted persons. U.S. CONST. amend VIII. A claim may arise in this context when a prison official engages in calculated or malicious harassment lacking in all penological justification. *Hudson v. Palmer*, 468 U.S. 517, 528-30 (1984). Plaintiff alleges that Defendant Lane had him fired from his prison job for no disciplinary reason, and that he lost good conduct credits. (Doc. 1, p. 7).

Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Here, Plaintiff provides no information about his prison job, the date his employment began, the date his employment ended, the reason given for his termination, the name(s) of the person(s) who terminated him, and/or how the termination resulted in a loss of good conduct

credits. As such, the allegations do not describe a plausible claim. Therefore, Count 1 will be dismissed without prejudice for failure to state a claim against Defendant Lane.

### Counts 2 and 3

The Fourteenth Amendment prohibits deprivations of "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To state a due process claim in the prison disciplinary context, Plaintiff must plead facts showing: (1) the existence of a constitutionally protected liberty interest that triggers the right to due process of law; and (2) deficient procedures in the disciplinary proceedings. *Lisle v. Welborn*, 933 F.3d 705, 720 (2019).

When determining whether disciplinary segregation implicates a protected liberty interest, courts consider "the 'combined import of the duration of the segregative confinement *and* the conditions endured.'" *Id*. at 965 (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)). Plaintiff alleges that he spent 14 days in segregation for the first disciplinary ticket issued in February 2024, and that he endured a strip search and fewer showers. He also alleges he spent an undisclosed amount of time in segregation for the second ticket issued in May 2024, but does not describe any adverse conditions. These allegations do not give rise to a protected liberty interest and are therefore insufficient to support a constitutional claim.

Additionally, it appears that Plaintiff was given all process that was due. "[The] administrative appeal process is part of the due process afforded to prisoners… there is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *See Morisette v. Peters*, 45 F.3d 1119, 1121-22 (7th Cir. 1995). This rule applies only when an administrative appeal cures the procedural defect before the punishment begins. *Id*. at 1122, n.4 (citation omitted). However, if an inmate suffers prolonged confinement in segregation

and endures poor conditions before the procedural defect is cured, a due process claim may still arise. *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021). Because both disciplinary tickets were expunged before Plaintiff spent prolonged periods of confinement in disciplinary segregation or faced significant adverse conditions,[4] Plaintiff has failed to articulate a viable Fourteenth Amendment due process claim. Thus, Counts 2 and 3 will be dismissed without prejudice against all defendants named in connection with these claims.

### Counts 4, 6, and 7

A plaintiff asserting a First Amendment retaliation claim must plead facts demonstrating that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). In Count 4, Plaintiff alleges that in retaliation for him filing a grievance to successfully challenge his second disciplinary ticket, Defendant Sullivan ignored a keep separate order, housed him with a transgender inmate, called him a "sissy," and incited other inmates to threaten him with bodily harm. These allegations state a colorable claim in Count 4 against Defendant Sullivan.

In Count 6, Plaintiff alleges that Defendants Banks and Moore retaliated against him when he refused to drop a grievance in December 2024, by denying him participation in the prison's dog training program. However, Plaintiff declined their invitation to participate in the dog training program before these defendants withdrew the offer. Moreover, Plaintiff does not allege that their

---

[4] Plaintiff complains of a strip search, reduced showers, and demotion to B/C grade. However, he does not describe the strip search, reduction in showers, or injuries that resulted. The demotion to B/C grade does not support a due process claim. *See Lekas v. Briley*, 405 F.3d 602 (7th Cir. 2005) (no liberty interest implicated by demotion to C-grade). .

7

withdrawal of the offer deterred him from filing complaints or grievances. Therefore, Count 6 will be dismissed for failure to state a claim against Defendants Banks and Moore.

With respect to Count 7, Plaintiff alleges that Defendants Banks and Moore move him to segregation on or around January 31, 2025 in retaliation for him for writing letters to the ARB, Office of Administrative Directives Standards, and/or John Howard Association to complain about the prison conditions by moving him to segregation. Based on these allegations, Count 7 will proceed against both defendants.

**Count 5**

The Eighth Amendment obligates prison officials to take reasonable steps to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff asserting a failure-to-protect claim against a prison official must identify a specific, impending, and substantial threat. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). A potential attack by another inmate may constitute a substantial risk of harm. *Beatty v. Henshaw*, 826 F. App'x 561, 564 (7th Cir. at 2020); *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Plaintiff alleges that Defendant Sullivan moved him into a cell with a transgender inmate, called him a "sissy" where other inmates could hear, and took no action when inmates threatened to harm and rape him on or around May 27, 2024. Plaintiff further alleges that Warden Galloway disregarded 15-plus grievances complaining about the serious risk of harm he faced because of Sullivan's alleged misconduct. Plaintiff states a colorable claim in Count 5 against Defendants Sullivan and Galloway.

**Disposition**

The Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A, as follows:

- **COUNT 4** will proceed against **SULLIVAN**;
- **COUNT 5** will proceed against **SULLIVAN** and **GALLOWAY**; and
- **COUNT 7** will proceed against **BANKS** and **MOORE**.

**ALL OTHER CLAIMS** (Counts 1, 2, 3, and 6) and **DEFENDANTS** (Garrett Lane, Robert Johnson, and John Doe 1-3) are **DISMISSED** without prejudice.

The Clerk shall prepare for Defendants **DARREN GALLOWAY, LIEUTENANT SULLIVAN, BRIAN BANKS,** and **INTERNAL AFFAIRS C/O MOORE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244 and SDIL-LR 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to TERMINATE Defendants Garrett Lane, Robert Johnson, and John Doe 1-3 as parties in CM/ECF.**

**IT IS SO ORDERED.**

**DATED:   August 21, 2025**              *s/ Staci M. Yandle*
                                          **STACI M. YANDLE**
                                          **United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.